UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

GABRIEL CASTILLO ROMERO,                )
                                        )
                    Petitioner,         )
                                        )
            v.                          )        No. 2:26-cv-00131-JRO-MG
                                        )
BRISON SWEARINGEN,                      )
SAMUEL OLSON,                           )
TODD LYONS,                             )
MARKWAYNE MULLIN, and                   )
TODD BLANCHE,[1]                        )
                                        )
                    Respondents.        )

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Gabriel Castillo Romero, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A). As such, his detention without bond pending removal proceedings does not violate the INA or its regulations governing bond determinations.

Petitioner also seeks relief under the Central District of California's declaratory judgment order in the class action *Maldonado Bautista v. Noem,* No. 5:25-cv-1873 (C.D. Cal. Dec. 18, 2025), the Administrative Procedure Act

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Markwayne Mullin (as Secretary of the U.S. Department of Homeland Security) and Todd Blanche (as Acting Attorney General of the United States) are automatically substituted for Respondents Kristi Noem and Pamela Jo Bondi as parties in this suit.

("APA"), and the Fifth Amendment's Due Process Clause.  But the *Maldonado Bautista* order has been stayed by the Ninth Circuit, and Petitioner has failed to allege a "final agency action" for APA review.  5 U.S.C. § 704.  Moreover, Petitioner's current detention does not violate due process.

The Court therefore **DENIES** his Petition for Writ of Habeas Corpus.  Dkt. [1].

## I.

## BACKGROUND

### A.    Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence.  *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of Mexico.  Dkt. 1 at 9; Dkt. 9-1 at 2.  In 2004, he entered the United States without inspection or parole.  Dkt. 1 at 9; Dkt. 9 at 2; Dkt. 9-1 at 2.  Years later, on January 22, 2026, Petitioner was arrested by local law enforcement in Grant County, Indiana, for driving without a license.  Dkt. 1 at 9; Dkt. 9-1 at 2.  U.S. Immigration and Customs Enforcement ("ICE") officers subsequently placed a detainer on Petitioner and issued an I-200 warrant for his arrest.  Dkt. 9-1 at 2; Dkt 9-2 at 1.  On January 30, 2026, ICE officers took

Petitioner into custody.  Dkt. 1 at 10; Dkt. 9 at 2.  The Department of Homeland Security also initiated removal proceedings by issuing him a Notice to Appear the same day.  Dkt. 9-3 at 1–4.

The NTA charges that Petitioner is removable based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation).  *Id.*  Petitioner's removal proceedings are ongoing, and he is currently detained at the Clay County Jail in Brazil, Indiana.  Dkt. 1 at 10; Dkt. 9 at 3.

Petitioner filed the instant habeas action on February 24, 2026.  Dkt. 1. He names as Respondents Brison Swearingen, Sheriff and Warden of the Clay County Jail; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; Samuel Olson, Director of the Chicago ICE Field Office; Todd Lyons, Acting Director of ICE; and Todd Blanche, Acting Attorney General of the United States.  Dkt. 1 at 6–7.

### B.  Statutory Background

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission." Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted." 8 U.S.C. § 1225(a)(1). The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) generally requires the detention and expedited removal of "arriving" aliens and certain other aliens determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. 8 U.S.C. § 1225(b)(1). Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287. With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, detention is mandatory pending removal proceedings.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien

"falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II.

## DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful policy shift by Respondents. Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission." Petitioner claims that Section 1226(a) and its associated regulations govern his detention and entitle him to a bond hearing. He also argues that his continued detention without bond violates the Central District of California's declaratory judgment order in *Maldonado Bautista v. Noem*, No. 5:25-cv-1873 (C.D. Cal. Dec. 18, 2025), the Administrative Procedure Act (APA), and the Fifth Amendment's Due Process Clause. Ultimately, he is not entitled to the relief he seeks.

### A.    Exhaustion

First, however, the Court addresses the Federal Respondents' argument that the Court should dismiss the petition because Petitioner "has not sought relief before the Immigration Judge or the Board of Immigration Appeals (BIA) and thus has not properly exhausted his remedies before filing suit." Dkt. 7 at 4–5. The Court declines Respondent's invitation and exercises its discretion not to require exhaustion of administrative remedies in this particular case.

The "general rule" is that "parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *Gonzalez v. O'Connell,* 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 144–45 (1992)). Exhaustion is no mere formality.

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi,* 422 U.S. 749, 765 (1975). This general rule often applies in immigration matters because "a comprehensive administrative review scheme exists" and, in some cases, exhaustion is mandated by statute. *Iddir v. INS,* 301 F.3d 492, 498 (7th Cir. 2002) (citing 8 U.S.C. § 1252(d) and collecting cases).

However, no statute mandates exhaustion for aliens challenging preliminary custody or bond determinations. *Gonzalez,* 355 F.3d at 1016. Accordingly, "sound judicial discretion governs." *Id.* (quoting *McCarthy,* 503 U.S. at 144). In exercising its discretion not to enforce the "general rule" of exhaustion, the Seventh Circuit has prescribed consideration of the following individual interests, which are well-recognized in Supreme Court precedent:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

6

*Gonzalez*, 355 F.3d at 1016 (quoting *Iddir*, 301 F.3d at 498); *accord McCarthy*, 503 U.S. at 146–49 ("This Court's precedents have recognized at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion."). A party seeking an excuse from exhaustion "need only show that one of the four exceptions outlined above applies." *Iddir*, 301 F.3d at 498.

The parties devote most of their briefing on exhaustion to the third prong: the futility of the administrative process. Petitioner suggests that the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), necessarily implies that any decision on his bond eligibility is predetermined. Dkt. 10 at 2–3. Respondents disagree, arguing that "if the BIA's decision in *Hurtado* were as clearly erroneous as Petitioner would maintain, an appeal to the BIA and the Seventh Circuit to re-consider the issue—even if ultimately unsuccessful—would be far from futile." Dkt. 9 at 4.

The Court need not resolve the futility dispute, or address the first two factors for excusing exhaustion, because Petitioner's due process claim raises a "substantial constitutional question[]." *Gonzalez*, 355 F.3d at 1016. The Seventh Circuit has clearly held that "an exception to the exhaustion requirement has been carved out for constitutional challenges to Agency procedures because the BIA has no jurisdiction to adjudicate constitutional issues." *Id.* (citing *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)); *see also McCarthy*, 503 U.S. at 147–48 ("[A]n agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional

7

competence to resolve the particular type of issue presented, such as the constitutionality of a statute."); *Salfi*, 422 U.S. at 765–66 ("[T]he constitutionality of a statutory requirement [is] a matter which is beyond [the agency's] jurisdiction to determine . . . .").

Even in situations where a petitioner has an alternative statutory argument for relief—like the Petitioner's Section 1226(a) argument here—the government generally may insist on exhaustion only for a petitioner "with a statutory argument that has a reasonable prospect of affording him relief" in the administrative process. *Gonzalez*, 355 F.3d at 1018. As explained below, the Court disagrees with Petitioner's statutory argument and essentially agrees with the BIA's clear and recent rejection of that argument as well. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216. Without a viable, alternative statutory basis for relief, reaching the constitutional due process issue is unavoidable.

To be clear, raising a procedural due process claim in an immigration detention and removal matter does not automatically excuse exhaustion of statutory and regulatory claims. Petitioners may not avoid exhaustion by restyling Respondents' failure to adhere to procedural rules as constitutional violations. *See Rashtabadi*, 23 F.3d at 1567 (excusing exhaustion does not apply to the "sorts of procedural errors which require exhaustion"). But Petitioner's argument here—that mandatory detention without bond of all applicants for admission violates the Fifth Amendment—is not a run-of-the-mill procedural claim. *E.g., Vargas Sanchez v. Olson*, No. 4:26- cv-00053-TWP-KMB, 2026 WL 801515, at *4 (S.D. Ind. Mar. 23, 2026) (denying habeas petition on exhaustion

grounds where petitioner objected to the agency's procedures in conducting a bond hearing and noting the "constitutional claim overlaps substantially with a specific administrative decision"). Rather, Petitioner is "challeng[ing] . . . the adequacy of the agency procedure itself [i.e., no bond hearing], such that the question of the adequacy of the administrative remedy is for all practical purposes identical with the merits of the [habeas Petition]." *McCarthy*, 503 U.S. at 148 (citations and alterations omitted). Under these unique circumstances, there is at least "some doubt as to whether the agency [is] empowered to grant effective relief." *Id.* at 147 (citation omitted).

Accordingly, the Court declines to exercise its discretion to dismiss the petition for failure to exhaust.

**B.   Section 1225 Applies to Petitioner**

Section 1225's plain terms require Petitioner's detention pending his removal proceedings. When engaging in statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation omitted). In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole. *Id.* at 852. Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ." *Id.*

To start, Petitioner is an "applicant for admission." The term is expressly defined in the statute as follows: "An alien present in the United States who has

not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1).  While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader.  "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here.  *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) ("Presence without admission deems the petitioners to be applicants for admission.").  There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted.  He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2). *Jennings*, 583 U.S. at 287.  No party argues that the former applies in this case. Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country.  Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings.

Petitioner raises several arguments rejecting this straightforward application of Section 1225.  The Court does not find these arguments persuasive.

### 1.    "Seeking Admission"

First, Petitioner suggests that Section 1225(b)(2)(A)'s "seeking admission" language limits its applicability to aliens who, unlike himself, affirmatively seek lawful entry at the country's borders and ports of entry.  Dkt. 1 at 11.

The Seventh Circuit—in dicta and an emergency stay posture on a non-habeas matter—has preliminarily agreed with Petitioner's reading.  *See Castanon v. U.S. Dep't Homeland Sec.,* 161 F.4th 1048, 1060–63 (7th Cir. 2025).  So too have other judges within this District.  *See, e.g., Alejandro v. Olson,* No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted)); *Campos Leon v. Forestal,* No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies.").  While these decisions warrant serious consideration, they are not binding upon this Court.  The Seventh Circuit has emphasized that decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record."  *Johnson v. Burken,* 930 F.2d 1202, 1205 (7th Cir. 1991).  And "district court opinions lack precedential force

even vis-à-vis other judges in the same judicial district." *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025) (citation omitted).

Respectfully, this Court reads Section 1225(b)(2)(A) differently, in line with the only appellate courts to date to have addressed the precise issue on the merits in a habeas action—*Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) and *Avila v. Bondi*, --- F.4th ---, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026)—as well as other district court judges within the Seventh Circuit.[2]

This Court has previously determined that the statutory language and context confirm that there is no separate and independent "seeking admission" element to Section 1225(b)(2)(A). *See Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026); *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026). Read most plainly, the term "seeking admission" is simply a synonym for applying for admission. And applying for admission is a participial form of the noun "applicant for admission." *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*,

---

[2] *Rayo v. Olson*, No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson*, No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson*, No. 1:25-cv-12961, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026) (Pacold, J.); *Ugarte-Arenas v. Olson*, No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed*, No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson*, No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed*, No. 25-3127 (7th Cir. Nov. 25, 2025).

2026 WL 819258, at *3 ("When a person applies for something, they are necessarily seeking it." (cleaned up)).

This plain language reading that *all* "applicant[s] for admission" are, by definition, "seeking admission" does not render superfluous the words "seeking admission" in Section 1225(b)(2)(A). Rather, because "applicant for admission" is expressly defined in the statute, it is best understood to qualify the broader meaning of "seeking admission." *Cf. United States v. Woodward*, 376 F.2d 136, 141 (7th Cir. 1967) (holding statutory terms "'alarm or disturb' . . . qualify the broader meaning of 'breach of the peace'" and are not superfluous). This makes sense, as one can also "seek[] admission" even when he is not at a port of entry or present in the United States. *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 741 (BIA 2012) (noting, for example, "an alien can 'again seek[] admission' . . . by applying for a visa at a consulate abroad").

Indeed, other provisions in Section 1225 demonstrate that all "applicant[s] for admission" are "seeking admission," not just those who recently arrived. Take Section 1225(a)(3), which provides that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission . . . shall be inspected by immigration officers." The provision's use of "or otherwise" indicates that "'applicants for admission' are a subset of those 'seeking admission.'" *Buenrostro-Mendez*, 166 F.4th at 503; *see also Avila*, 2026 WL 819258, at *3 n.4. Consider too Section 1225(a)(5): "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United

13

States . . . ." (emphasis added).  Notably, the provision refers to the purposes and intentions of "the *applicant* in seeking admission"—not "the arriving alien in seeking admission."   In other words, all "applicant[s] for admission" are necessarily "seeking admission," regardless of when they arrive.

What's more, Congress knew how to say "arriving alien" when it wanted to in Section 1225.  It did not need to qualify "applicant for admission" with a separate and independent "seeking admission" requirement to achieve that effect.  For example, Section 1225(b)(1)(A) explicitly limits its applicability to (1) "an alien . . . who is arriving," and (2) certain other unadmitted aliens who do not have two years of continuous physical presence in the United States.  Tellingly, Section 1225(b)(2)(A) contains no such temporal limitation.  *See Negrete Ramirez v. Noem*, No. 1:25-cv-00206-CMS, 2026 WL 251725, at *3 (E.D. Mo. Jan. 30, 2026) ("If Congress intended that an alien no longer is 'seeking admission' after some amount of time in the United States, it could have said so.").

Petitioner may find it strange that he could be "seeking admission" if he is already in the United States.  But that is a feature of Section 1225, not a bug.  The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  Petitioner never effected a *lawful* entry into the country.  He was not admitted.  In the eyes of the INA, he remains an "applicant for admission" knocking on the proverbial door—that is, "seeking admission."  This is not a

novel or even recent understanding of our immigration laws. In 2012, the Board of Immigration Appeals explained:

> In ordinary parlance, the phrase "seeks admission" connotes a request for *permission* to enter . . . . The problem, however, is that Congress has defined the concept of an "applicant for admission" in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances. . . . In other words, many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.

*Matter of Lemus-Losa*, 25 I. & N. Dec. at 743 (emphasis in original). Thus, the term "seeking admission" does not create an independent pre-requisite for mandatory detention under Section 1225(b)(2)(A).

### 2.   "Arriving Aliens"

Second, Petitioner argues he is not subject to mandatory detention because, broadly speaking, Section 1225(b) applies to aliens "arriving at U.S. ports of entry or who recently entered the United States." Dkt. 1 at 15. Petitioner, by contrast, has been in the country for over two decades. *Accord Mohammed v. Olson,* No. 1:25-cv-02404-TWP-MKK, 2025 WL 3541819, at *4 (S.D. Ind. Dec. 10, 2025) ("Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to 'arriving' noncitizens attempting to enter the United States.").

General characterizations of a statute's overall purpose, however, cannot substitute for its specific and plain words. *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text."). As this Court discussed in a prior Order, Section 1225 concerns "applicant[s] for admission," which is a clearly defined term that includes but is not restricted only to arriving aliens or other recent border crossers. *Demir*, 2026 WL 706485, at \*5.

The Supreme Court did not hold otherwise in *Jennings v. Rodriguez*. That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms. *See Jennings*, 583 U.S. at 287 ("That process of decision *generally* begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)). *Accord Buenrostro-Mendez*, 166 F.4th at 505; *Avila*, 2026 WL 819258, at \*5.

Granted, it is beyond question that Section 1225 applies to "arriving aliens." Section 1225, however, does not apply *only* to arriving aliens but to all non-admitted aliens present in the country, regardless of when they arrived. Any argument based on how this statute applies in many or even most cases does not tell us anything about what it means in every case, and specifically, nothing about what it means when applied to the facts before the Court today.

16

### 3.    1225 Versus 1226

Third, Petitioner argues that Section 1226, not Section 1225(b)(2)(A), "applies to people charged as being inadmissible, including those who entered without inspection." Dkt. 1 at 15. The Court also rejected this argument in a previous Order. *Demir*, 2026 WL 706485, at *5–6. Petitioner's argument incorrectly presumes that Sections 1225 and 1226 are mutually exclusive. Other courts in this District have made this presumption explicit by holding that once the Government has already invoked its authority under Section 1226(a) by arresting an alien pursuant to an I-200 warrant, the Government is limited to the process described in Section 1226 and is barred from relying upon Section 1225. *See, e.g.*, *Mohammed*, 2025 WL 3541819, at *3 ("[T]he Government has affirmatively decided to treat' the Petitioner 'as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." (quoting *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025)).

But, respectfully, nothing in the plain text of Sections 1225 and 1226 suggests that the mandates and procedures in these sections are mutually exclusive. They merely overlap. *See Buenrostro-Mendez*, 166 F.4th at 505–06; *Avila*, 2026 WL 819258, at *5. First, much of Section 1226 applies expressly to *admitted* aliens who may be arrested, detained, and removed for various reasons, such as committing certain criminal acts. *E.g.*, 8 U.S.C. §§ 1226(c)(1)(B), (C) (referring to 8 U.S.C. § 1227(a)(2)). When an arrestee is an admitted alien, Section 1226's bond provision clearly applies. But this does not necessarily

17

imply that the bond provision must also apply when an arrestee is an *unadmitted* alien who falls squarely within the plain meaning of Section 1225(b)(2)(A)'s mandatory detention provision. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 219 ("Section [1226] does not purport to overrule the mandatory detention requirements . . . in section [1225](b)(1) and (2).").

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes— like the INA—that are often interspersed with "specific solutions" to "specific problems." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel*, 566 U.S. at 645. "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one." *Id.* Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A). The specific is the exception to the general, and it applies to Petitioner in this case. *Accord Rodriguez v. Olson*, No. 1:25-cv-12961, 2026 WL 63613, at *7 (N.D. Ill. Jan. 8, 2026) (applying general/specific canon to enforce

18

Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226, as explained above. Further, Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added). In other words, the Government is free to exercise its discretion in how it executes the provisions of Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner. It harmonizes the two provisions. At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions. *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy.").

### 4.    Past Practice

Petitioner also argues that Respondent's application of Section 1225(b)(2)(A)'s mandatory detention provision not only to recent arrivals but also

19

to unadmitted aliens already in the country like himself is contrary to "decades of prior [agency] practice." Dkt. 1. at 13.  However, the Court takes seriously its independent duty to interpret the law as written, regardless of an agency's past practice.  And "in cases where [a court's] own judgment . . . differ[s] from that of other high functionaries," the Court is "not at liberty to surrender, or to waive it.'"  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (quoting *United States v. Dickson*, 40 U.S. 141, 162 (1841) (Story, J.)).  Past practice aside, Respondent's interpretation of "seeking admission" is not entirely novel.  *See Matter of Lemus-Losa*, 25 I. & N. Dec. at 743.

* * *

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not.  As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity."  *Buenrostro-Mendez*, 166 F.4th at 499; *see also Avila*, 2026 WL 819258, at *4; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully").  Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

Granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time. And Petitioner expressly argues this point. Dkt. 1 at 15–16. That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a). It is also inconsistent with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A).

## C.   Bond Regulations

Petitioner next argues that "[t]he application of § 1225(b)(2) to [himself] mandates his continued detention and violates [the bond regulations at] 8 C.F.R § 236.1, 1236.1 and 1003.19." Dkt. 1 at 18. But this argument simply

restyles his previous argument that Section 1226(a) applies to his detention and not Section 1225.

The regulations Petitioner cites implement and elaborate upon the procedures prescribed by Section 1226. As their shared title suggests, the regulations at 8 C.F.R §§ 236.1 and 1236.1 concern the same subject matter—"apprehension, custody, and detention." That includes procedures for the Section 1226(a) bond determinations and appeals thereof. For example, both regulations state:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in **section 236(c)(1) of the Act** [8 U.S.C. § 1226(c)(1)], under the conditions at **section 236(a)(2) and (3) of the Act** [8 U.S.C. § 1226(a)(2), (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

8 C.F.R § 236.1(c)(8); *id.* § 1236.1(c)(8) (emphasis added). They also provide:

> [T]he immigration judge is authorized to exercise the authority in **section 236 of the Act** [8 U.S.C. § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter.

8 C.F.R § 236.1(d)(1); *id.* § 1236.1(d)(1) (emphasis added). For its part, 8 C.F.R § 1003.19 further specifies that "bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236" and establishes procedures for such review.

These regulations implement Section 236 of the INA, that is, 8 U.S.C. § 1226, and impose no broader obligation on the government than Section 1226

22

itself. *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) ("An agency's regulation cannot operate independently of the statute that authorized it." (internal quotation marks and citation omitted)). The Court has determined that Section 1225 governs Petitioner's detention—not Section 1226 and its discretionary bond provision. The cited bond regulations therefore do not apply to Petitioner, and Respondents have not violated them by detaining him without bond pending removal proceedings.

**D.    *Maldonado Bautista* order**

Petitioner also contends that his detention without bond pending removal proceedings violates the Central District of California's declaratory judgment order in *Maldonado Bautista v. Noem*, No. 5:25-cv-1873, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Dkt. 1 at 16. On November 25, 2025, the district court in *Maldonado Baustista* certified a nationwide "bond eligible" class, which it defined as:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). Thereafter, on December 18, 2025, the district court declared that "bond eligible" class members "are detained

23

under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)." *Maldonado Bautista*, 2025 WL 3678485, at *1.

On March 31, 2026, however, the United States Court of Appeals for the Ninth Circuit stayed the *Maldonado Bautista* declaratory judgment order pending appeal. *Bautista v. U.S. Dep't Homeland Sec.*, Case No. 26-1044, Dkt. 17 (9th Cir. Mar. 31, 2026). As such, Petitioner's detention under Section 1225(b)(2)(A) does not violate the *Maldonado Bautista* declaratory judgment.

In any event, the Court observes that the Supreme Court's recent decision in *Trump v. J.G.G.*, 604 U.S. 670 (2025), may "forbid [it] to grant [Petitioner] relief based on *Maldonado Bautista's* declaratory judgment." *Bazurto v. Olson*, No. 1:26-cv-00122-SEB-CSW, 2026 WL 285993, at *2 n.1 (S.D. Ind. Feb. 3, 2026) (explaining that the Supreme Court in *J.G.G.* "vacated a preliminary injunction barring the removal of a provisionally certified class of aliens and held that class members must pursue any relief in habeas actions in the districts where they were confined" (citing *J.G.G.*, 604 U.S. at 673–74)); *see also Gonzalez v. Maples*, No. 4:26-cv-00022-TWP-KMB, 2026 WL 413373, at *1 n.2 (S.D. Ind. Feb. 13, 2026) (same). Given the Ninth Circuit's stay, Petitioner may not rely upon the Central District of California's declaratory judgment order in *Maldonado Bautista* to seek relief today.

## E.    Administrative Procedure Act

Petitioner further argues that his detention pending removal proceedings arises from an agency action that is "arbitrary, capricious, [and] and abuse of

24

discretion," in violation of the Administrative Procedure Act ("APA").  Dkt. 1 at 19–22 (quoting 5 U.S.C. § 706(2)(A)).

As a threshold matter, the Court's review is limited to a "final agency action."  5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").  This is essentially the APA's version of the exhaustion requirement.  *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (noting "the primary thrust of § 10(c) of the APA [i.e., 5 U.S.C. § 704] was to codify the exhaustion requirement").  "Two conditions generally must be satisfied for agency action to be final under the APA. The challenged action must represent the consummation of an agency's decisionmaking process and must determine rights or obligations." *Dubey v. Dep't of Homeland Sec.*, 154 F.4th 534, 537 (7th Cir. 2025) (cleaned up).

It is unclear which agency action Petitioner contends is the "final agency action" appropriate for judicial review.  He seeks judicial review of ICE's decision to "detain[]," "categorically revok[e] Petitioner's release and seek[] to transfer him away from the district without consideration of his individualized facts and circumstances," and all in "reliance on its expanded mandatory detention policy . . . and [the BIA decision] in *Matter of Yajure Hurtado*."  Dkt. 1 at 19, 21.  As best as the Court can tell, this all suggest Petitioner is seeking judicial review of three agency actions: (1) ICE "revok[ed] Petitioner's release," (2) ICE "seeks to transfer him away from the district without consideration of his individualized

25

facts and circumstances," and (3) ICE detained him "without consideration of his individualized facts and circumstances."  None of these are final agency actions.

The first action, revocation of a prior release, dkt. 1 at 19, never happened. Nothing in the record shows that Petitioner was apprehended by immigration authorities and released when entering the country without inspection in 2004.[3] Petitioner's first run-in with immigration officers was on January 30, 2026, following his arrest in Grant County, Indiana, for driving without a license.  Dkt. 1 at 9; Dkt. 9-1 at 2.  He was never detained or released before, whether on parole, bond, or otherwise.  The record before the Court offers no evidence that the agency was even aware that he was in the United States before his arrest on January 22, 2026.

The second action, transfer without individualized consideration, dkt. 1 at 19, has not yet occurred.  Whether by "transfer" Petitioner means transfer to another district in the United States pending this litigation or removal from the United States, it is obvious on the face of the Petition that no transfer has yet occurred.  So any transfer is hypothetical, at best.

The third action, detention without individualized consideration for release pending removal proceedings, dkt. 1 at 19, did happen.  However, as

---

[3] The Court suspects that Petitioner's revocation of prior release argument is the result of his counsel using a draft habeas petition filed in a different case and then failing to edit out inapplicable portions before filing the draft in this case. For example, Petitioner also references a prior "grant of deferred action under the U visa program," dkt. 1 at 6, but makes no other reference to U visa status anywhere else in his pleadings or evidence.  There is no evidence in the record to support this U visa contention, just as there is no evidence in the record to support the contention that there was a revocation of a previous release.  Regardless of how these extraneous allegations found their way in the Petition, the Court finds they are not supported by the evidence.

Respondents note, "the Petitioner ... has not yet requested [a bond hearing]." Dkt. 9 at 4. In other words, "the consummation of an agency's decisionmaking process" with respect to his detention pending removal proceedings has not occurred. *Dubey*, 154 F.4th at 537; *accord Dhakal v. Sessions*, 895 F.3d 532, 539 (7th Cir. 2018) (dismissing APA claim for failure to allege a final agency action and noting "[a]n agency action is not final if it is only 'the ruling of a subordinate official, or 'tentative.'" (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)); *cf. Velazquez-Olais v. Blanche*, --- F.4th ---, No. 25-1244, 2026 WL 926199, at *1 (7th Cir. Apr. 6, 2026) ("[I]t is not possible to see an email from a field office as the agency's final decision . . . ."). Until the Petitioner requests a bond hearing and is denied one, the agency's act of detaining him without individualized consideration is not a "final agency action" subject to APA judicial review in federal district court.

The Court notes that the Supreme Court has held that the final agency action (i.e., exhaustion) requirement under 5 U.S.C. § 704 is limited to "exhaustion of administrative remedies . . . which the statute or rule clearly mandates." *Darby*, 509 U.S. at 146; it does not require "litigants to exhaust optional appeals as well." *Id.* at 147. Petitioner correctly explains that "[n]o statute exists that requires [him] to request an immigration custody redetermination hearing prior to seeking habeas relief before this Court," citing *Gonzalez*, 355 F.3d at 1016, in support. Dkt. 9 at 2. Indeed, Respondents do not identify one.

27

But these decisions are inapplicable here. *Gonzalez* addressed an alien who had a bond redetermination hearing but failed to appeal that decision before the BIA before filing suit. *Id.* at 1012. Petitioner, however, has not even asked for one yet. Petitioner may not need to exhaust all "optional appeals" if a bond hearing is ultimately denied, *see Darby*, 509 U.S. at 146, but he must still trigger an initial agency action beyond the mere fact of his detention by subordinate ICE officials. *See Dhakal*, 895 F.3d at 539. In other words, he must first ask the agency to do what he asks of this Court. Until then, "final agency action" has yet occurred on the dispositive issue presently before the Court.

The Court is also concerned, in this particular case, with the general lack of cogency with which Petitioner has presented his APA claim. "It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action,'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) (quoting *Michigan v. E.P.A.*, 576 U.S. 743, 758 (2015)), that is, the grounds "upon which the record discloses that its action was based." *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87 (1943). Petitioner's explanation of the grounds for ICE's decision are unclear at best. He makes passing reference to "a [new] July 8, 2025 [policy], instructing all [ICE] employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond." Dkt. 1 at 2; *see also* Dkt. 1 at 13. Petitioner then argues—as best as the Court can tell—that it was arbitrary,

28

capricious, and an abuse of discretion for ICE to rely upon DHS's new "mandatory detention policy" and *Matter of Yajure Hurtado* without consideration of his individualized facts and circumstances. Dkt. 1 at 21.[4] But by framing his claim in this way, he not so much challenges the agency's rationale as restates his statutory argument that the agency erroneously subjected him to mandatory detention pursuant to Section 1225(b)(2)(A). This may be an argument that the agency's action is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law," 5 U.S.C. § 706(2)(C) & (D)—which, as discussed above, it is not. But it does not appear to be an argument that the agency's action was arbitrary, capricious, or an abuse of discretion. If Petitioner is arguing something more, the Court does not understand what it might be. Accordingly, Petitioner's case would benefit from further development before the agency, or at least a more coherent presentation, to tee up the APA analysis.

In sum, the APA claim is premature and the Court denies it, without prejudice, on that basis.

## F.    Due Process

Finally, Petitioner argues his detention without bond pending removal proceedings violates his due process rights under the Fifth Amendment. Dkt. 1 at 22–25. The Court disagrees.

---

[4] The Petition does not seek APA judicial review of DHS's decision to adopt a new policy in July 2025. Rather, the Petitioner is seeking review of the decision to detain him because it was allegedly arbitrary, capricious, and an abuse of discretion for ICE to rely upon DHS's new policy and *Matter of Yajure Hurtado* without consideration of his individualized facts and circumstances.

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003).  That holding settles the issue. And this Court reached the same conclusion in a previous action that is materially indistinguishable from this case.  *Demir*, 2026 WL 706485, at *7–8.

Petitioner argues that due process requires an "individualized determination of whether he is a safety or flight risk."  Dkt. 1 at 23.  But the Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528.  Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis.  Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner cites *Zadvydas* to support his argument, but that case is distinguishable.  There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention.   In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite

detention from "detention pending a determination of removability," which has an "obvious termination point." *Zadvydas*, 533 U.S. at 697. Petitioner's detention here is a detention pending removal proceedings. Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

And even in cases like *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," *id.* at 690, thereby eliminating the premise for detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701. Petitioner has been detained by ICE pending his removal proceedings for approximately two months. Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

## III.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Gabriel Castillo Romero's Petition for Writ of Habeas Corpus. The Court **DISMISSES** his APA claim **without prejudice** and all other claims **with prejudice**. Dkt. [1]. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 4/8/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

31